126 T.C. No. 1

UNITED STATES TAX COURT

LLWELLYN GREENE-THAPEDI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7940-01L.                    Filed January 12, 2006.

In her original petition, P challenged R's notice
of determination sustaining a proposed levy to collect
P's 1992 income tax.  She contended, among other
things, that R had failed to make a timely assessment
of her 1992 tax liabilities and had included excessive
interest accruals in her 1992 balance due; she sought a
refund of certain amounts previously paid with respect
to her 1992 account.  After the petition was filed, P's
1992 balance due was eliminated by R's offset of P's
1999 overpayment, pursuant to sec. 6402(a), I.R.C.  P
amended her petition in the Tax Court, seeking an
increased refund. Held:  Inasmuch as R agrees that
there is no unpaid 1992 tax liability upon which a levy
could be based and that no further collection action
should be taken, P's challenges to the proposed levy
are moot.  Held, further, this Court lacks jurisdiction
in this collection review proceeding to determine an
overpayment or to order a refund or credit of taxes.
Held, further, this case will be dismissed as moot.

Llwellyn Greene-Thapedi, pro se.

Robert T. Little and Michael F. O'Donnell, for respondent.

OPINION

THORNTON, Judge:  Pursuant to section 6330(d), petitioner seeks review of respondent's determination to proceed with a proposed levy.[1]

Background

When she petitioned this Court, petitioner resided in Chicago, Illinois.

Stipulated Decision for 1992 Taxable Year

On June 5, 1997, in a prior deficiency proceeding involving petitioner's 1992 taxable year, this Court entered a stipulated decision that petitioner had a $10,195 deficiency in income tax due but owed no additions to tax or penalties.  The parties stipulated that interest would be assessed as provided by law and that effective upon entry of the decision by the Court, petitioner waived the restrictions contained in section 6213(a) prohibiting assessment and collection of the deficiency (plus statutory interest) until the decision of the Tax Court becomes final.

_____

[1] All section references are to the Internal Revenue Code, as amended.

Collection Action on 1992 Liability

Respondent contends that on December 19, 1997, petitioner's 1992 deficiency was assessed and petitioner was sent a notice of balance due (including accrued interest) of $14,514.53. Petitioner disputes that any notice of balance due was ever sent. In any event, petitioner made no payment on her 1992 deficiency at that time.

On July 3, 2000, respondent sent petitioner a Form CP 504, "Urgent!! We intend to levy on certain assets. Please respond NOW." (Form CP 504), for taxable year 1992, indicating that she owed $23,805.53.[2] By checks dated July 18, 2000, petitioner paid respondent $14,514.53 on her 1992 account; i.e., the amount of her balance as of December 19, 1997.[3] Contemporaneously, petitioner submitted to respondent a Form 12153, Request for a Collection Due Process Hearing, dated July 18, 2000, with respect to her 1992 tax year.[4] On the Form 12153, petitioner complained

---

[2] The Form CP 504 indicated that the $23,805.53 balance included a "Penalty" of $2,622.56 and "Interest" of $4,298.30. The $4,298.30 of "Interest" was apparently in addition to other amounts of previously accrued interest.

[3] One of the checks was for $10,195; the memo line on the check states that it is for "Additional Tax 1992 Under Protest". The other check was for $4,319.53; the memo line states that this amount is for "1992 Interest Assessment Under Protest". A transcript of petitioner's account attached to the Form CP 504 sent to petitioner on July 3, 2000, showed the $4,319.53 amount as an interest assessment that was made on Dec. 19, 1997.

[4] The Appeals Office apparently treated this request as
(continued...)

that the balance shown on respondent's Form CP 504 included erroneous penalties and interest accruals.

On January 9, 2001, respondent issued petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (the Final Notice) with respect to her 1992 income tax liabilities, showing an assessed balance of $4,992.70, and stating that this amount did not include accrued penalties and interest.[5]  Petitioner submitted another Form 12153, dated January 17, 2001, again requesting a hearing with respect to her 1992 taxable year and stating: "I do not owe the money.  Notice improper".

Appeals Office Hearing and Notice of Determination

The Appeals Office hearing consisted of an exchange of correspondence and telephone conversations.  During the hearing, petitioner contended that she was not liable for any interest accruals between December 19, 1997, and July 3, 2000, on the ground that she had not received the December 19, 1997, notice of balance due and was not notified of any balance due until July 3, 2000.  By Notice of Determination dated May 22, 2001,

---

[4](...continued)
premature, on the ground that petitioner had not yet received any notice of Federal tax lien filing, final notice of intent to levy, or notice of jeopardy levy with respect to taxable year 1992.

[5] The record does not otherwise conclusively establish how the $4,992.70 assessed balance was calculated.

respondent's Appeals Office sustained the proposed collection action.[6]

Tax Court Petition

On June 22, 2001, petitioner filed her petition in this Court.[7] The petition disputed, among other things, interest and penalties with respect to her 1992 income tax liability and requested this Court to order respondent to credit or refund what she alleged to be her tax overpayment for 1992. The petition also alleged that petitioner had failed to receive a meaningful Appeals Office hearing as required by section 6330.

Respondent's Motion for Partial Summary Judgment

On October 17, 2002, respondent filed a motion for partial summary judgment with respect to the issue of whether petitioner was afforded the opportunity for an Appeals Office administrative hearing under sections 6320 and 6330. By Order dated February 25, 2003, this Court granted respondent's motion for partial

---

[6] The Notice of Determination also sustained a separate collection action for petitioner's 1997 taxable year. As explained in the following note, that matter is now moot.

[7] The original petition included taxable years 1991, 1992, and 1997. By Order dated Sept. 13, 2001, this Court granted respondent's motion to dismiss for lack of jurisdiction as to taxable year 1991 on the ground that petitioner had not been issued a notice of determination with respect to that year. By Order dated Feb. 24, 2003, this Court dismissed the collection action as to taxable year 1997 as being moot, on the ground that respondent had conceded that the disputed 1997 tax liability had not been assessed and that respondent had erred in issuing a final notice of intent to levy with respect to the 1997 taxable year.

summary judgment, holding that "petitioner was provided with a meaningful opportunity for a collection due process hearing in this case."

Petitioner's Motion To Add 1999 Taxable Year to This Proceeding

Respondent's just-described motion for partial summary judgment indicated, among other things, that after the filing of the petition, respondent had offset a $10,633 overpayment from petitioner's 1999 income tax account against petitioner's 1992 tax liability, resulting in full payment of petitioner's 1992 liability.[8]  On December 3, 2002, petitioner filed a motion for leave to amend her petition to add taxable year 1999 to this proceeding.  In her motion, petitioner stated that she had been "caught by surprise" by the information in respondent's motion that respondent had offset her 1999 overpayment against her alleged 1992 tax liability.  By Order dated January 30, 2003, this Court denied petitioner's motion for leave to amend her petition.  The Order stated:

> Respondent contends, and we agree, that petitioner is
> not permitted to dispute in this collection review
> proceeding respondent's application of an overpayment

---

[8] The record does not conclusively establish when the offset occurred.  On brief, respondent proposes as a finding of fact that the offset occurred on or about May 19, 2001, "subsequent to the filing of the petition in this case."  (In fact, the original petition was filed on June 22, 2001.)  This proposed finding of fact appears inconsistent with respondent's responses to petitioner's interrogatories, in which respondent stated that the offset occurred "during the week beginning October 6, 2002."

to offset all or part of the tax due for taxable year 1992 although the latter year is otherwise subject to review under section 6330. See, e.g., <u>Trent v. Commissioner</u>, T.C. Memo. 2002-285.

## District Court Refund Suit

Petitioner then filed a refund suit in the United States District Court, Northern District of Illinois, Eastern Division, claiming a refund of her 1999 overpayment. The United States moved to dismiss on the ground that as a matter of law petitioner has no claim for a 1999 overpayment because the credit against the 1999 tax year no longer exists, having been applied against petitioner's outstanding 1992 tax liability pursuant to section 6402(a). By memorandum opinion and order entered December 11, 2003, the District Court denied the Government's motion to dismiss, on the ground that it could not determine as a matter of law that petitioner's 1999 overpayment did not exceed her 1992 liability, so that the Government's section 6402(a) duty to "refund any balance to such person" would not arise in the District Court case. The District Court stated:

> Finally, the Court is mindful that although the Tax Court does not have concurrent jurisdiction over the issues in the present suit, which relates to the 1999 tax year, <u>see</u> <u>Statland v. United States</u>, 178 F.3d 465, 470-71 (7th Cir. 1999), the Tax Court proceedings related to Plaintiff's 1992 tax liability will likely resolve certain facts necessary to the resolution of the present litigation. Therefore, this matter is stayed pending the outcome of the Tax Court proceedings.

Amended Petition

Petitioner subsequently filed an unopposed motion for leave to file an amended petition in these Tax Court proceedings. In her amended petition, petitioner contended that the Appeals Office erred in determining that the proposed levy with respect to her 1992 taxable year should proceed. She also challenged her liability for the 1992 deficiency and associated interest on the ground that respondent had failed to make timely notice and demand for payment.

## Discussion

This Court previously dismissed this case as to petitioner's taxable years 1991 and 1997, leaving only 1992 at issue. Sometime after the petition was filed, respondent applied petitioner's 1999 overpayment to offset her 1992 tax liability. Consequently, respondent no longer claims any amount to be due and owing from petitioner with respect to her 1992 income tax account. On supplemental brief respondent states that he "intends to take no further collection action with respect to * * * [petitioner's] 1992 tax liability". Accordingly,

respondent contends that this case should be dismissed as moot.[9] For the reasons described below, we agree.

The Tax Court is a court of limited jurisdiction; we may exercise jurisdiction only to the extent expressly authorized by Congress.  See, e.g., <u>Henry Randolph Consulting v. Commissioner</u>, 112 T.C. 1, 4 (1999).  Our jurisdiction in this case is predicated upon section 6330(d)(1)(A), which gives the Tax Court jurisdiction "with respect to such matter" as is covered by the final determination in a requested hearing before the Appeals Office.  See <u>Davis v. Commissioner</u>, 115 T.C. 35, 37 (2000).  "Thus, our jurisdiction is defined by the scope of the determination" that the Appeals officer is required to make.  <u>Freije v. Commissioner</u>, 125 T.C. 14, 25 (2005).

The Appeals officer's written determination is expected to address "the issues presented by the taxpayer and considered at the hearing."  H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B.

---

[9] Neither party originally argued that this case was moot as to petitioner's taxable year 1992.  Mootness, however, "is a jurisdictional question, since article III, section 2 of the Constitution limits jurisdiction of the Federal judicial system to 'cases' and 'controversies.'"  <u>Hefti v. Commissioner</u>, 97 T.C. 180, 191 (1991), affd. 983 F.2d 868 (8th Cir. 1993).  "The failure to question our jurisdiction is not a waiver of the right to do so, for if we lack jurisdiction over an issue, we do not have the power to decide it."  <u>Urbano v. Commissioner</u>, 122 T.C. 384, 389 (2004).  Accordingly, the Court has an independent obligation to consider mootness sua sponte.  <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971).  For this reason, the Court directed the parties to file supplemental briefs addressing the issue of whether this case should be dismissed as moot.

747, 1020.  At the hearing, the Appeals officer is required to verify that "the requirements of any applicable law or administrative procedure have been met."  Sec. 6330(c)(1); see sec. 6330(c)(3)(A).[10]  The Appeals officer is also required to address whether the proposed collection action balances the need for efficient tax collection with the legitimate concern that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3)(C).  The taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy".  Sec. 6330(c)(2)(A).  The taxpayer is also entitled to challenge "the existence or amount of the underlying tax liability" if he or she "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

In Chocallo v. Commissioner, T.C. Memo. 2004-152, the Commissioner had acknowledged that the tax liability he had been trying to collect by levy had been improperly assessed, had refunded previously collected amounts with interest, and had agreed that there was no unpaid tax liability upon which a levy could be based.  Accordingly, this Court dismissed the case as moot.  The Court stated:  "Our jurisdiction under section 6330 is

---

[10] Although this language is somewhat open ended, the legislative history clarifies that this required verification pertains to legal and administrative requirements "for the proposed collection action".  H. Conf. Rept. 105-599, at 264 (1998), 1998-3 C.B. 747, 1018.

generally limited to reviewing whether a proposed levy action is proper." Id. The Court declined to entertain the taxpayer's motion for sanctions against the Government, reasoning that the taxpayer "has received all the relief to which she is entitled under section 6330". Id. Similarly, in Gerakios v. Commissioner, T.C. Memo. 2004-203, we dismissed the collection review proceeding as moot where the parties agreed that there was no unpaid liability upon which a lien or levy could be based after the taxpayer had paid the liability in full.

In the instant case, as in Chocallo and Gerakios, respondent acknowledges that there is no unpaid liability for the determination year upon which a levy could be based and has stated that he is no longer pursuing the proposed levy. Accordingly, in this case, as in Chocallo and Gerakios, the proposed levy for petitioner's 1992 tax liability is moot.

In the instant case, unlike in Chocallo, respondent does not concede that the proposed levy was improperly made, nor has respondent returned to petitioner the disputed amounts that have been applied to satisfy petitioner's 1992 account. These circumstances, however, do not dictate a different result in this case. In this case, unlike in Chocallo, respondent has collected no amounts by levy. Respondent's offset of petitioner's 1999 overpayment against her 1992 tax account was pursuant to section

6402(a).[11]  An offset under section 6402 does not constitute a
levy action and accordingly is not a collection action that is
subject to review in this section 6330 proceeding.  Bullock v.
Commissioner, T.C. Memo. 2003-5; see Boyd v. Commissioner, 124
T.C. 296, 300 (2005); sec. 301.6330-1(g)(2), Q&A-G3, Proced. &
Admin. Regs. (an offset is a nonlevy collection action that the
Internal Revenue Service may take during the suspension period
provided in section 6330(e)(1)).

In the instant case, unlike in Chocallo v. Commissioner,
supra, and Gerakios v. Commissioner, supra, there remains
unresolved petitioner's claims for a refund.  In her amended
petition, petitioner contends that she is not liable for the 1992
deficiency and associated interest on the ground that respondent
failed to assess the deficiency and mail her a timely notice and
demand to pay; alternatively, she contends that pursuant to
section 6601(c) she is not liable for interest accruals from the
period from July 5, 1997 (when she claims respondent was required

---

[11] In her amended petition, petitioner requested that we
find that respondent was not authorized to credit her $10,633
income tax overpayment for 1999 against her 1992 account.
Petitioner has not pursued this argument on brief, and we deem
her to have abandoned it.  See Nicklaus v. Commissioner, 117 T.C.
117, 120 n.4 (2001) (concluding that taxpayers abandoned
arguments and contentions asserted prior to the filing of their
brief where they failed to advance those arguments and
contentions on brief).  Even if we had not concluded that
petitioner had abandoned this argument, however, we would
nevertheless conclude, for the reasons discussed supra, that we
lack authority to consider this matter pursuant to sec. 6330.

to make notice and demand for payment of her 1992 deficiency) to July 3, 2000 (when respondent sent her Form CP 504 requesting payment). On brief, petitioner contends that she is entitled to a refund for:

> all compound interest she paid for the period April 15, 1993 to July 18, 2000, all interest she paid for periods during which interest was suspended or [sic] July 5, 1997 to July 3, 2000; and for all sums that she paid for penalties and additions and interest on such, that were disallowed by the June 5, 1997 Tax Court decision.

Petitioner's claim for a refund arises, if at all, under section 6330(c)(2), as an outgrowth of her challenge to the existence and amount of her underlying 1992 tax liability.[12] Pursuant to section 6330(c)(2), however, whatever right petitioner may have to challenge the existence and amount of her underlying tax liability in this proceeding arises only in connection with her challenge to the proposed collection action. Inasmuch as the proposed levy is moot, petitioner has no independent basis to challenge the existence or amount of her underlying tax liability in this proceeding.

More fundamentally, section 6330 does not expressly give this Court jurisdiction to determine an overpayment or to order a refund or credit of taxes paid. This Court has not previously

---

[12] The right to challenge the existence and amount of underlying tax liability encompasses the right to challenge the existence and amount of disputed interest thereon. Urbano v. Commissioner, 122 T.C. 384, 389-390 (2004).

addressed the question as to whether such jurisdiction arises implicitly in collection review proceedings commenced in this Court pursuant to section 6330.[13]  The legislative history of this Court's overpayment and refund jurisdiction in deficiency proceedings is relevant in addressing this question.[14]

When our predecessor, the Board of Tax Appeals (the Board) was created in 1924, it lacked jurisdiction to determine an overpayment for the year in question in a deficiency proceeding.[15]  Cf. Dickerman & Englis, Inc. v. Commissioner, 5 B.T.A. 633, 634-635 (1926).  The Revenue Act of 1926, ch. 27, 44 Stat. 9, established the Board's jurisdiction to determine an overpayment in a deficiency proceeding.  The Board still had no jurisdiction, however, to order payment of any resulting refund. Id. at 635-636; see United States ex rel. Girard Trust Co. v.

---

[13] This Court has exercised its inherent equitable powers to order the Commissioner to return to the taxpayer property that was improperly levied upon, see Chocallo v. Commissioner, T.C. Memo. 2004-152, and to require the Commissioner to provide to the taxpayer a credit with respect to property that the Commissioner had seized pursuant to a jeopardy levy but had improperly refused to sell in compliance with the taxpayer's request made pursuant to sec. 6335(f), see Zapara v. Commissioner, 124 T.C. 223 (2005).

[14] By "deficiency proceeding" we mean a proceeding filed in Tax Court pursuant to sec. 6213 challenging a notice of deficiency issued pursuant to sec. 6212(a).

[15] But cf. Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 421 n.7 (1943) (noting the Board's assumption of jurisdiction, and the legislative revocation thereof, to determine an overpayment for a nondeficiency year in unique circumstances where the overpayment was netted against the deficiency).

Helvering, 301 U.S. 540, 542 (1937).  That situation persisted

until 1988 when Congress enacted section 6512(b), giving the Tax

Court jurisdiction to order the refund of overpayments determined

in deficiency proceedings.[16]  Technical and Miscellaneous Revenue

Act of 1988, Pub. L. 100-647, sec. 6244, 102 Stat. 3750.   This

legislative history makes clear that Congress believed that

absent this legislative change the Tax Court lacked authority to

---

[16] Sec. 6512(b)(2) provides:

> Jurisdiction to enforce.  If, after 120 days after a
> decision of the Tax Court has become final, the
> Secretary has failed to refund the overpayment
> determined by the Tax Court, together with the interest
> thereon as provided in subchapter B of chapter 67, then
> the Tax Court, upon motion by the taxpayer, shall have
> jurisdiction to order the refund of such overpayment
> and interest.  An order of the Tax Court disposing of a
> motion under this paragraph shall be reviewable in the
> same manner as a decision of the Tax Court, but only
> with respect to the matters determined in such order.

Sec. 6512(b)(2), read in isolation, does not expressly
confine to deficiency proceedings the Tax Court's jurisdiction to
enforce overpayments; read in the context of sec. 6512 as a
whole, however, that is clearly the effect.  Sec. 6512(a)
describes limitations on claiming a refund or credit when a
petition is filed in Tax Court in response to a "notice of
deficiency".  Sec. 6512(b)(1) confers on the Tax Court
jurisdiction to determine an overpayment "if the Tax Court finds
that there is no deficiency and further finds that the taxpayer
has made an overpayment * * * or finds that there is a deficiency
but that the taxpayer has made an overpayment".  Pursuant to sec.
6512(b)(3), no credit or refund will be allowed unless the Tax
Court determines as part of its decision that (among other
things) the tax was paid "after the mailing of the notice of
deficiency".  Similarly, as more fully described in the following
note, the legislative history indicates that enactment of sec.
6512(b)(2) was in response to treatment under then-present law of
"a refund of a tax for which the IRS has asserted a deficiency."
H. Conf. Rept. 100-1104, at 231 (1988), 1988-3 C.B. 473, 721.

order the refund of any overpayment.[17]  In this same legislation,
the Senate proposed to expand the Tax Court's refund jurisdiction
by granting the Tax Court jurisdiction over tax refund actions
where the taxpayer already had a related deficiency proceeding
pending in Tax Court.  H. Conf. Rept. 100-1104 (Vol. II), at 234
(1988), 1988-3 C.B. 473, 724.  This proposal was rejected in
conference.  See id.  In describing "Present Law" as related to
this proposal, the conference report stated:  "The Tax Court has
no jurisdiction to determine whether a taxpayer has made an
overpayment except in the context of a deficiency proceeding."[18]

_____

[17] In describing the law as it existed before the enactment
of sec. 6512(b)(2), the conference report states:

> The Tax Court has jurisdiction to determine that a
> taxpayer is due a refund of a tax for which the IRS has
> asserted a deficiency.  However, if the IRS fails to
> refund or credit an overpayment determined by the Tax
> Court, the taxpayer must seek relief in another court.
> [H. Conf. Rept. 100-1104, at 231 (1988), 1988-3 C.B.
> 473, 721.]

Describing the "Reasons for change", the report of the Senate
Finance Committee states:

> The committee believes that if the Tax Court
> determines that a taxpayer is due a refund and the IRS
> fails to issue that refund, the taxpayer should not
> have to incur the additional time, trouble, and expense
> of enforcing the Tax Court's decision in another forum.
> Rather, the taxpayer should be able to enforce the
> decision in the court that entered the decision.  [S.
> Rept. 100-309, at 17 (1988).]

[18] As discussed infra, this situation changed in 1996, with
the enactment of sec. 6404(h) (as currently designated), by the
Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 302(a), 110

(continued...)

Id. at 233, 1988-3 C.B. at 723. In the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1451, 111 Stat. 1054, Congress enacted section 6512(b)(4), which clarifies that in determining an overpayment pursuant to section 6512(b), the Tax Court has no jurisdiction to "restrain or review any credit or reduction made by the Secretary under section 6402." See H. Conf. Rept. 105-220, at 732 (1997), 1997-4 C.B. (Vol. 2) 1457, 2202 (stating that this amendment "clarifies that the Tax Court does not have jurisdiction over the validity or merits of the credits or offsets that reduce or eliminate the refund to which the taxpayer was otherwise entitled.").

In sum, given that explicit statutory authority was required before this Court acquired jurisdiction to determine overpayments in deficiency cases, and given that additional explicit statutory authority was required before this Court acquired, decades later, jurisdiction to enforce such an overpayment, and given that Congress later clarified legislatively that this overpayment jurisdiction did not extend to reviewing credits under section 6402 (such as the credit of petitioner's 1999 overpayment against

---

[18](...continued)
Stat. 1457 (1996). This Court has construed this provision, which expressly cross-references sec. 6512(b), as conferring on the Tax Court jurisdiction to determine the amount of a taxpayer's overpayment in a proceeding brought pursuant to sec. 6404(h) to review the IRS's failure to abate interest. See Goettee v. Commissioner, T.C. Memo. 2003-43.

her 1992 tax liability), we do not believe we should assume, without explicit statutory authority, jurisdiction either to determine an overpayment or to order a refund or credit of taxes paid in a section 6330 collection proceeding.[19] As discussed below, this conclusion is reinforced by the absence in section 6330 of the traditional statutory limitations on the allowance of refunds or credits of taxes.

Section 6511 contains detailed limitations on the allowance of tax credits or refunds generally. Section 6511(a) sets out the requisite time periods for filing a claim for credit or refund.[20] Section 6511(b)(2) limits the amount of tax to be refunded to two so-called look-back periods: (1) For claims filed within 3 years of filing the return, the refund is

---

[19] We do not mean to suggest that this Court is foreclosed from considering whether the taxpayer has paid more than was owed, where such a determination is necessary for a correct and complete determination of whether the proposed collection action should proceed. Conceivably, there could be a collection action review proceeding where (unlike the instant case) the proposed collection action is not moot and where pursuant to sec. 6330(c)(2)(B), the taxpayer is entitled to challenge "the existence or amount of the underlying tax liability". In such a case, the validity of the proposed collection action might depend upon whether the taxpayer has any unpaid balance, which might implicate the question of whether the taxpayer has paid more than was owed.

[20] Sec. 6511 requires a taxpayer to file a refund claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." Sec. 6511(a); see sec. 6511(b)(1); Commissioner v. Lundy, 516 U.S. 235, 240 (1996).

generally limited to the portion of the tax paid within the 3 years immediately before the claim was filed; (2) for claims not filed within 3 years of filing the return, the refund is generally limited to the portion of the tax paid during the 2 years immediately before the claim was filed.  See Commissioner v. Lundy, 516 U.S. 235, 240 (1996).  Section 6512(b)(3) generally incorporates these rules where taxpayers who challenge deficiency notices in Tax Court are found to be entitled to refunds.

By contrast, section 6330 incorporates no such limitations on the allowance of tax refunds or credits.  There is no indication that in enacting section 6330, Congress intended, sub silentio, to provide taxpayers a back-door route to tax refunds and credits free of these longstanding and well-established limitations.  Nor, in light of the detailed and comprehensive codification of such limitations in sections 6511 and 6512(b), do we believe that Congress would have intended that such limitations should arise by inference in section 6330 with respect to claims for tax refunds or credits as to which our jurisdiction would similarly arise under section 6330, if at all, only by inference.  Consequently, we are led to the conclusion that Congress did not intend section 6330 to provide for the allowance of tax refunds and credits.

Petitioner's claim for a refund is based at least partly on her claim that she does not owe at least some of the assessed

interest, on the ground that respondent failed to make timely notice and demand for payment of her 1992 deficiency. This Court has held that in an appeal brought under section 6330(d), where the existence and amount of the taxpayer's underlying tax liability is properly at issue, our jurisdiction allows us to review the taxpayer's claim for interest abatement pursuant to section 6404, see Katz v. Commissioner, 115 T.C. 329, 340-341 (2000), as well as to redetermine the correct amount of the taxpayer's interest liability where the claim falls outside of section 6404, see Urbano v. Commissioner, 122 T.C. 384, 389-393 (2004). In interest-abatement proceedings brought under section 6404(h), this Court has held that we have jurisdiction to determine the amount of an overpayment pursuant to section 6404(h)(2)(B), which states: "Rules similar to the rules of section 6512(b) shall apply for purposes of this subsection." See Goettee v. Commissioner, T.C. Memo. 2003-43.

We do not believe that petitioner's refund claim is properly construed as being predicated on a claim for interest abatement pursuant to section 6404.[21] But even if petitioner's claim were

_____

[21] Neither in the administrative hearing nor in this Court proceeding has petitioner expressly asserted any claim for interest abatement pursuant to sec. 6404. The gist of her claim is that respondent has erroneously or illegally assessed interest, by failing to make timely notice and demand for payment of her 1992 deficiency. A claim for interest abatement predicated on allegations of erroneous or illegal assessment is prohibited in an income tax case (such as the instant case), by

(continued...)

so construed, that circumstance would not affect our conclusion that we lack jurisdiction under section 6330 to determine any overpayment or to order a refund or credit.  Unlike section 6404(h), section 6330 contains no cross-reference to the rules of section 6512(b), nor does section 6330 cross-reference section 6404(h)(2)(B), which makes section 6512(b)-type rules applicable only "for purposes of this subsection" (i.e., subsection (h) of section 6404).  Section 6404(h)(2)(B) illustrates that Congress has acted infrequently to extend this Court's overpayment jurisdiction, and then only in a deliberate and circumscribed manner.  These considerations buttress our conclusion that we should not assume overpayment jurisdiction in a section 6330(d) proceeding absent express statutory provision.

We are mindful that the District Court has stayed petitioner's refund case with the expectation that this Court

---

[21](...continued)
virtue of sec. 6404(b), which provides:  "No claim for abatement shall be filed by a taxpayer in respect of an assessment of * * * [income] tax imposed under subtitle A".  See Urbano v. Commissioner, 122 T.C. at 395; see also Melin v. Commissioner, 54 F.3d 432 (7th Cir. 1995); Bax v. Commissioner, 13 F.3d 54, 58 (2d Cir. 1993); Asciutto v. Commissioner, T.C. Memo. 1992-564, affd. per order 26 F.3d 108 (9th Cir. 1994).  Petitioner has not alleged, and the record does not suggest, that she qualifies for abatement of interest under the applicable version of sec. 6404(e), which would require unreasonable error or delay resulting from a "ministerial act".  See Urbano v. Commissioner, supra at 390 n.4 (describing the 1996 legislative amendment which broadened the scope of sec. 6404(e) to include "managerial and ministerial" acts, effective for interest accruing on deficiencies for taxable years beginning after July 30, 1996).

would resolve certain relevant facts in this proceeding. Because we lack jurisdiction in this proceeding to determine petitioner's 1992 overpayment or to order a refund or credit of petitioner's 1992 taxes, and because the proposed collection action for 1992 is now moot, no factual issue remains which would affect the disposition of the case before us. For us to undertake to resolve issues that would not affect the disposition of this case would, at best, amount to rendering an advisory opinion. This we decline to do. Cf. LTV Corp. v. Commissioner, 64 T.C. 589, 595 (1975) (declining to provide an advisory opinion as to the amount of net operating losses (NOLs) in post-deficiency years in a deficiency case in which respondent had conceded NOLs sufficient to eliminate any deficiency for the year at issue).

For the reasons discussed, we shall dismiss this case as moot.

An appropriate order of dismissal will be entered.

Reviewed by the Court.

GERBER, COHEN, WELLS, HALPERN, CHIECHI, LARO, GALE, HAINES, GOEKE, KROUPA, and HOLMES, JJ., agree with this majority opinion.

FOLEY, J., concurs in result only.

COLVIN, J., concurring:  I accept as correct the majority's interpretation of the statute and our lack of jurisdiction in this case.  However, I write separately to highlight the fact that the Commissioner's offset authority can cause undesirable consequences for taxpayers and the Court in collection review proceedings under sections 6320 and 6330.

The majority holds that petitioner properly invoked the Court's jurisdiction under section 6330 by filing a timely petition challenging respondent's notice of determination regarding the proposed collection of her tax liability for 1992. The majority also holds that action was rendered moot because petitioner later overpaid her Federal income tax for 1999, and the Commissioner offset that overpayment by the amount of her unpaid 1992 tax liability.

Typically in these situations, a taxpayer's only remedy may be to fully pay the tax, file a refund claim, and if unsuccessful, institute a tax refund suit in Federal District Court or the Court of Federal Claims.  As a result, taxpayer protections provided in sections 6320 and 6330, that is, the right to administrative and judicial review of the Commissioner's collection actions, can quickly evaporate simply because the taxpayer overpaid his or her taxes for another year.

The circumstances present here may recur in future cases. The combination of the Commissioner's authority to offset an

overpayment and the mootness doctrine may cause taxpayer frustration and waste judicial resources. The dismissal of a proceeding brought in this Court under section 6320 or 6330 due to the offset of an overpayment may convince taxpayers that their efforts during the administrative and judicial process were wasted. Taxpayers may draw little solace from the fact that they can reinstate their challenge to the Commissioner's collection action by filing a refund suit in another court.

MARVEL, WHERRY, and HOLMES, JJ., agree with this concurring opinion.

VASQUEZ, J., dissenting:  I respectfully disagree with the conclusions of the majority primarily because I believe section 6330 provides the Court with jurisdiction to decide there is an overpayment.  Additionally, the majority states:  "the proposed levy for petitioner's 1992 tax liability is moot."  Majority op. p. 11.  I do not believe, however, that the case is moot.

Rules of Statutory Construction

Remedial legislation should be construed broadly and liberally to effectuate its purposes.  Tcherepnin v. Knight, 389 U.S. 332, 336 (1967); Piedmont & N. Ry. Co. v. ICC, 286 U.S. 299, 311 (1932); see Washington v. Commissioner, 120 T.C. 137, 155-156, 158 (2003) (Washington II) (noting the Court's obligation to liberally construe the remedial provisions of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, 112 Stat. 685).  Section 6330[1] is remedial legislation.  Katz v. Commissioner, 115 T.C. 329, 333 n.8 (2000) ("Congress enacted secs. 6320 (pertaining to liens) and 6330 (pertaining to levies) to provide new protections for taxpayers with regard to collection matters."); S. Rept. 105-174, at 67 (1998), 1998-3 C.B. 537, 603 ("The Committee believes that taxpayers are entitled to protections in dealing with the IRS * * * The Committee believes that following procedures designed to

---

[1]  Unless otherwise indicated, all section references are to the applicable Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

afford taxpayers due process in collections will increase fairness to taxpayers.").

Section 6330(d):  Jurisdiction

Our collection action review jurisdiction is set forth in section 6330(d).  Section 6330(d) provides:  "(1) Judicial Review of Determination.--The person may, within 30 days of a determination under this section, appeal such determination--(A) to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)".  The requirements for exercising our jurisdiction under section 6330 are that "we have general jurisdiction over the type of tax involved, a 'determination' by Appeals and a timely [filed] petition".  Lunsford v. Commissioner, 117 T.C. 159, 161 (2001).

Petitioner filed a timely petition with the Court in this case in response to the notice of determination.  Accordingly, we have jurisdiction over petitioner's case, and the instant controversy is within the jurisdiction of the Court.  Id.; see Woods v. Commissioner, 92 T.C. 776, 787 (1989).  Once a taxpayer invokes the jurisdiction of the Court, jurisdiction lies with the Court and remains unimpaired until the Court has decided the controversy.  Naftel v. Commissioner, 85 T.C. 527, 529-530 (1985); Dorl v. Commissioner, 57 T.C. 720, 722 (1972), affd. 507 F.2d 406 (2d Cir. 1974).

The U.S. Court of Appeals for the Ninth Circuit recently addressed mootness in the context of section 7436 (employment classification) cases. Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203 (9th Cir. 2005), affg. 121 T.C. 89 (2003). The Commissioner argued that there was no actual case or controversy that a certain individual was an employee of the taxpayer, and accordingly this deprived the Tax Court of jurisdiction. Id. at 1206, 1207. In affirming that the Tax Court had jurisdiction, the court noted: "the Commissioner's approach is contrary to the prevalent approach to subject-matter jurisdiction and the few cases * * * [that have] considered the Tax Court's jurisdiction. * * * as a general matter a federal court's subject-matter jurisdiction is determined at the time it is invoked." Id. at 1208.

Additionally, the Commissioner's concession of a deficiency in a deficiency case does not deprive the Tax Court of jurisdiction over the subject matter of that year; it is the determination of a deficiency, rather than the existence of a deficiency, that is dispositive as to our jurisdiction. Id. at 1209 (citing the Tax Court's reasoning in the underlying case concluding we had jurisdiction, in which we cited LTV Corp. v. Commissioner, 64 T.C. 589 (1975), and Hannan v. Commissioner, 52 T.C. 787, 791 (1969)).

I do not believe that the Commissioner can unilaterally deprive the Court of jurisdiction in section 6330 cases by merely stating that he no longer intends to proceed with collection. The congressional intent behind the enactment of section 6330 is frustrated if the Commissioner can unilaterally deprive the Tax Court of jurisdiction after directing the taxpayer to the Tax Court by issuing the notice of determination.  See id.

Respondent's statement that he will not proceed with collection is not a concession that the taxes are not due.  See id. at 1208.  A statement that does not change respondent's position on the amount of tax due for 1992 cannot deprive the Court of the jurisdiction we acquired when petitioner filed her petition for review of the notice of determination which challenged the amount of the underlying tax liability.  Id. Although respondent states that he no longer intends to take further collection action against petitioner, respondent's statement has no bearing on our jurisdiction.  See id. at 1209; LTV Corp. v. Commissioner, supra.

Petitioner contends that she is entitled to a refund of her overpayment.  Majority op. pp. 3-4, 12-13.  Respondent argues that he timely mailed the notice and demand, and therefore petitioner is not entitled to an overpayment/refund larger than

he concedes.[2]  Id.  Petitioner and respondent disagree about the date of the first notice and demand, which affects the correct computation of petitioner's interest, which affects the correct amount of petitioner's underlying tax liability for 1992, which affects the amount of petitioner's overpayment and refund.  Id. Accordingly, there is no question as to the existence of an actual case or controversy.  See Charlotte's Office Boutique, Inc. v. Commissioner, supra at 1211.

Section 6330(c)(3):  "Determination"

The "determination" that we have jurisdiction to review under section 6330(d) is set forth in section 6330(c)(3).  The determination made "by an appeals officer under this subsection" shall take into consideration "(A) the verification presented under paragraph (1); (B) the issues raised under paragraph (2); and (C) whether any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than

---

[2]  In his pretrial memorandum, dated Sept. 3, 2004, respondent stated:  "What remains at issue is the amount of the refund for 1992 owed to the petitioner, which turns primarily on when the notice and demand was sent to the petitioner for the 1992 tax liability."  At the recall of this case on Sept. 20, 2004, respondent stated:  "There's an overpayment on 1992.  This whole proceeding is about how large an overpayment Petitioner is to receive."  Respondent continued:  "we're thinking that this is a case that's appropriate for a [Rule] 155 [computation] because whichever way the Court rules, it will be necessary to do a computation as to the amount of the refund.  * * * I ballparked the refund at something like $2,600 * * * and more if the Petitioner wins."

necessary." Sec. 6330(c)(3); see <u>Washington v. Commissioner</u>, 120 T.C. 114, 126 (2003) (Washington I) (Halpern, J., concurring). Thus, the components of subparagraphs (A), (B), and (C) of section 6330(c)(3) are part of "the determination" of the Appeals officer and "the determination" that the Tax Court has jurisdiction over pursuant to section 6330(d)(1). See Washington I, <u>supra</u> at 129 (Halpern, J., concurring); <u>id.</u> at 131 (Beghe, J., concurring). Accordingly, the section 6330 determination, and our review of the section 6330 determination, consists of more than merely whether or not a notice of intent to levy (or lien) should be sustained and whether the Commissioner can proceed with collection. See also Washington I; <u>Katz v. Commissioner</u>, 115 T.C. 329 (2000); <u>Krueger v. Commissioner</u>, T.C. Memo. 2005-105; <u>Skrizowski v. Commissioner</u>, T.C. Memo. 2004-229; sec. 301.6330-1(e)(3) Q&A-E8(i), -E11, Proced. & Admin. Regs.

At the hearing, petitioner contended that she was not liable for any interest accruals between December 19, 1997, and July 3, 2000. Majority op. p. 4. In her requests for a hearing, petitioner claimed that she did not owe the money respondent was seeking to collect. Majority op. pp. 3-4. Accordingly, the determination included whether petitioner was liable for any interest accruals between December 19, 1997, and July 3, 2000, and whether she did owe the money respondent sought to collect-- that when the 1999 overpayment was applied to 1992 there was an

"overpayment"[3] of her 1992 liability.  As there was a timely petition from the notice of determination, we have jurisdiction to review respondent's determinations whether petitioner was liable for interest accruals between December 19, 1997, and July 3, 2000, and whether there was an overpayment for 1992.  Sec. 6330(c)(2)(A) and (B), (3), (d); see Meadows v. Commissioner, 405 F.3d 949, 952 (11th Cir. 2005).

Section 6511 and Overpayments in Section 6330 Cases

The majority seems to suggest that because section 6330 does not incorporate the limitations contained in section 6511 that section 6511 does not apply to section 6330 proceedings. Majority op. pp. 18-19.  This is contrary to our established precedent.

In cases where the taxpayer argued that overpayments exist for prior years that they thought should be used to reduce or

---

[3] The U.S. Supreme Court has provided the following definition of an "overpayment":  "any payment in excess of that which is properly due."  Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947); Estate of Baumgardner v. Commissioner, 85 T.C. 445, 449-450, 460-461 (1985).  "[A] tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all."  United States v. Dalm, 494 U.S. 596, 609 n.6 (1990). The term "overpayment" encompasses "erroneously", "illegally", or "wrongfully" collected taxes.  Id.

The question of whether there is an overpayment is independent of whether there is a deficiency.  Bachner v. Commissioner, 81 F.3d 1274, 1279 (3d Cir. 1996).  The term "overpayment" has the same meaning in this Court as in the U.S. District Courts and the Court of Federal Claims.  Sunoco, Inc. & Subs. v. Commissioner, 122 T.C. 88, 99 (2004).

eliminate the unpaid tax for the years in issue, we have reviewed those arguments. In <u>Landry v. Commissioner</u>, 116 T.C. 60 (2001), <u>Tedokon v. Commissioner</u>, T.C. Memo. 2002-308, and <u>Deaton v. Commissioner</u>, T.C. Memo. 2005-1, we considered whether section 6511 precluded the allowance of any portion of the taxpayers' overpayment from prior years as a credit against the taxpayers' tax liabilities for subsequent years that were the years in issue--i.e., whether the overpayments were made within the section 6511 look-back period. In none of these cases were the overpayments made within the applicable look-back period. Accordingly, we did not reach the issue of whether we had authority to enter a decision that an overpayment exists.

<u>Deciding an Overpayment Exists in Section 6330 Cases</u>

When a taxpayer petitions this Court seeking review of the Commissioner's section 6330 determination regarding the taxpayer's underlying tax liability under section 6330(c)(2)(B), we take jurisdiction over the entire underlying tax liability. Cf. <u>Estate of Mueller v. Commissioner</u>, 101 T.C. 551, 556 (1993); <u>Naftel v. Commissioner</u>, 85 T.C. at 533. The term "underlying tax liability" includes both amounts assessed following the issuance of a notice of deficiency and amounts "self-assessed" by taxpayers. <u>Montgomery v. Commissioner</u>, 122 T.C. 1, 7-8 (2004).

When reviewing a determination regarding section 6330(c)(2)(B), the Court reviews the underlying tax liability.

Robinette v. Commissioner, 123 T.C. 85, 93 (2004); Washington I, 120 T.C. at 128 (Halpern, J., concurring). Where a challenge to the existence or amount of a taxpayer's underlying liability is properly before the Court, "we should decide that challenge in the same manner as we would redetermine a deficiency pursuant to section 6214." Washington I, supra at 129 (Halpern, J., concurring). Accordingly, when a taxpayer challenges the amount of the underlying liability pursuant to section 6330(c)(2)(B), our review of the underlying tax liability may lead to the conclusion that the underlying tax liability should be lowered, and such a finding presents the possibility of the existence of an overpayment, as is the case herein.

Particularly as section 6330 cases involve a prepayment posture and an opportunity to contest collection of the amount of tax owed, and the tax must be paid in full as a prerequisite to commencement of a refund suit brought in U.S. District Court or the U.S. Court of Federal Claims, lack of jurisdiction to decide an overpayment in section 6330 cases would leave taxpayers in a "Catch-22" where their tax was overpaid but the period of limitations on claiming the refund may have run, the look-back rules of section 6511(b) may limit or eliminate the amount of the

refund,[4] or res judicata[5] may bar their claim.  Flora v.

_____

[4]  Notably, sec. 6330(e)(1) does not provide for the suspension of the period of limitations for seeking a claim for credit or refund pursuant to sec. 6511.

> The very purpose of statutes of limitations in the tax context is to bar the assertion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious.  That a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar.  [United States v. Dalm, 494 U.S. 596, 609 n.7 (1990).]

It is very likely that after the time elapsed in the sec. 6330 proceedings most taxpayers' refund claims would be barred by the period of limitations contained in sec. 6511 or severely limited or eliminated by the look-back rules of sec. 6511(b).  This is so because if taxpayers cannot obtain refunds as an outgrowth of a sec. 6330 proceeding, as respondent suggests, no action taken by a taxpayer as part of the sec. 6330 proceedings can be a claim for refund pursuant to sec. 6511.  See Commissioner v. Lundy, 516 U.S. 235, 249-250 (1996); Jackson v. Commissioner, T.C. Memo. 2002-44; sec. 301.6402-2(b)(1), Proced. & Admin. Regs.

[5]  The Supreme Court, in Commissioner v. Sunnen, 333 U.S. 591, 599 (1948), stated:

> Income taxes are levied on an annual basis.  Each year is the origin of a new liability and of a separate cause of action.  Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. * * *

Accordingly, because taxpayers can claim that they overpaid their taxes ("paid more than was owed") in a sec. 6330 case, majority op. p. 18 note 19, the doctrine of res judicata might bar taxpayers from initiating a refund suit in U.S. District Court or the U.S. Court of Federal Claims.  See Estate of Baumgardner v. Commissioner, supra at 452; Newstat v. Commissioner, T.C. Memo. 2004-208 (res judicata applied to the overpayment claim in the section 6330 case because it involved "the same cause of action"

(continued...)

United States, 357 U.S. 63 (1958); see Estate of Baumgardner v. Commissioner, 85 T.C. 445, 453, 461 (1985).

Explicit Statutory Authority

1.  Majority View

The majority narrowly construes the statute and concludes that "explicit [specific] statutory authority" is necessary for the Court to acquire jurisdiction.  Majority op. pp. 17, 18.  We note, however, that when Congress wants to deny the Tax Court jurisdiction over overpayments and refunds it knows how to do so.  Secs. 6214(b), 6512(b)(4); Revenue Act of 1926, ch. 27, sec. 274(g), 44 Stat. 56.

Section 6512(b)(4) states:  "The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402."  Section 6330 contains no explicit statutory language limiting our overpayment or refund jurisdiction.  Accordingly, in the absence of such explicit language, Congress did not deny us jurisdiction to decide that there has been an overpayment.

The majority seems to acknowledge that from our inception the Board did have jurisdiction to determine an overpayment in certain circumstances.  Majority op. p. 14 & note 15 ("When our

---

[5](...continued)
as the deficiency case); Lowy, Thoughts on Practicalities Of the CDP Process, 107 Tax Notes 783 (May 9, 2005) (in cases involving the underlying tax liability, "the doctrine of *res judicata* may bar a refund action subsequent to the CDP process").

predecessor, the Board of Tax Appeals (the Board) was created in 1924, it lacked jurisdiction to determine an overpayment for the year in question in a deficiency proceeding" and citing, with a signal indicating contradiction ("but cf."), Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418 (1943)).  The majority, however, does not acknowledge the fact that the Board decided it had overpayment jurisdiction pursuant to the Revenue Act of 1924, ch. 234, 43 Stat. 253 (which created the Board and established its jurisdiction), which lacked explicit statutory language granting the Board overpayment jurisdiction. Furthermore, the majority contradicts its acknowledgment of the Board's conclusion that it had overpayment jurisdiction absent explicit statutory authority by stating that "explicit statutory authority was required before this Court acquired jurisdiction to determine overpayments in deficiency cases".  Majority op. pp. 14, 17-18.  A review of our overpayment jurisdiction explains why the majority's conclusion that the language of section 6330 does not provide overpayment jurisdiction, because of the absence of "explicit statutory authority", is incorrect.  Majority op. pp. 17, 18.

Our predecessor, the Board of Tax Appeals, was created by section 900 of the Revenue Act of 1924.  Revenue Act of 1924, ch. 234, sec. 900, 43 Stat. 336; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 721 (1929); Williamsport Wire Rope

<u>Co. v. United States</u>, 277 U.S. 551, 562 n.7 (1928).  The Revenue

Act of 1924 gave taxpayers the right to appeal to the Board "if,

after June 2, 1924, the Commissioner determined any assessment

should be made."  <u>Barry v. Commissioner</u>, 1 B.T.A. 156, 158

(1924); see <u>Hickory Spinning Co. v. Commissioner</u>, 1 B.T.A. 409,

410 (1925).

In <u>Barry v. Commissioner</u>, <u>supra</u> at 158, the Commissioner

contended that the Board's jurisdiction was limited to the

deficiency determined for 1921, and the Board could not consider

the taxpayer's overpayment claim for 1920 because "any decision

by the Board as to 1920 would be, in effect, deciding whether or

not the taxpayer is entitled to a refund."  The Board disagreed

and concluded that it had jurisdiction to consider the taxpayer's

overpayment claim.  <u>Id.</u>  The Board reaffirmed that it had

overpayment jurisdiction pursuant to the language of the Revenue

Act of 1924 in <u>Hickory Spinning Co. v. Commissioner</u>, <u>supra</u> at

411, 412, <u>Walker-Crim Co. Inc. v. Commissioner</u>, 1 B.T.A. 599, 601

(1925), and <u>Maritime Sec. Co. v. Commissioner</u>, 2 B.T.A. 188, 193

(1925).[6]

---

[6]  The opinions in <u>Barry v. Commissioner</u>, 1 B.T.A. 156
(1924), <u>Hickory Spinning Co. v. Commissioner</u>, 1 B.T.A. 409
(1925),  <u>Walker-Crim Co. Inc. v. Commissioner</u>, 1 B.T.A. 599
(1925), and <u>Maritime Sec. Co. v. Commissioner</u>, 2 B.T.A. 188
(1925), all were reviewed by the entire Board.  Revenue Revision,
1925, Hearings before the Committee on Ways and Means House of
Representatives, 69th Cong. 860 (1925) (statement of J. Gilmer
Korner, Jr., Chairman Board of Tax Appeals).

Shortly after the Revenue Act of 1924 was enacted, Congress held hearings regarding the Act and devoted 2 days of the hearings to the Board of Tax Appeals. Revenue Revision, 1925, Hearings before the Committee on Ways and Means House of Representatives (1925 Hearings), 69th Cong. iii-iv (1925). Two points Congress repeatedly heard were that (1) the Board was overwhelmed and overworked by the amount of business it had to transact and (2) the Board's jurisdiction should be limited so that it could continue to function. Id. at 10 (statement of Hon. Andrew W. Mellon, Secretary of the Treasury), 854 (statement of Dr. Joseph J. Klein), 870 (statement of J. Gilmer Korner, Jr., Chairman Board of Tax Appeals), 884 and 904 (statement of George M. Morris, Secretary Special Committee on Taxation of the American Bar Association), 934 (statement of A.W. Gregg, Solicitor of Internal Revenue, Treasury Department).

Additionally, a former chairman of the Board of Tax Appeals noted that the issue of the Board's jurisdiction was of great importance, that Congress's grant of jurisdiction to the Board was "somewhat indefinite and does not clearly define what cases it may take jurisdiction of", and that regarding certain overpayment cases that the Board had heard: "As to those cases the commissioner, before the board, has questioned the board's jurisdiction, and the board has held that it has jurisdiction." Id. at 922-923 (statement of Charles D. Hamel).

Subsequently, the Revenue Act of 1926, ch. 27, 44 Stat. 56, was enacted. Section 274(g) of the Revenue Act of 1926 eliminated the overpayment jurisdiction the Board concluded it had in Barry v. Commissioner, supra. Estate of Mueller v. Commissioner, 101 T.C. at 558-559. The Supreme Court observed:

> Before section 272(g) [of the Revenue Act of 1934, 48 Stat. 680] of the Internal Revenue Code was enacted, the Board [of Tax Appeals] held that it had jurisdiction to determine an overpayment for a year as to which no deficiency had been found by the Commissioner and to apply that overpayment against the liability for the year as to which he found a deficiency * * * . Appeal of E.J. Barry, 1 B.T.A. 156. Soon thereafter, however, Congress passed section 274(g) of the Revenue Act of 1926 (now section 272(g) of the Internal Revenue Code) taking such jurisdiction away from the board. [Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 421 n.7 (1943); emphasis added.]

Congress, at the same time, also confirmed and clarified the Board's jurisdiction and authority to decide an overpayment. Revenue Act of 1926, ch. 27, sec. 284(e), 44 Stat. 67.

Thus, in 1924, in Barry, the Board decided it had overpayment jurisdiction, and Congress confirmed the Board's jurisdiction and authority to decide an overpayment in the Revenue Act of 1926.

   2.   My View

My view advances our established precedent that "In view of the statutory scheme as a whole, we think the substantive and procedural protections contained in sections 6320 and 6330 reflect congressional intent that the Commissioner should collect

the correct amount of tax". <u>Montgomery v. Commissioner</u>, 122 T.C. at 10. In section 6330 cases, taxpayers should be able to claim an overpayment, and the Court should be able to enter a decision for an overpayment to ensure that the Commissioner collects no more than the correct amount of tax.

Although the Tax Court has limited jurisdiction,[7] section 6330 expanded the Court's jurisdiction. <u>Robinette v. Commissioner</u>, 123 T.C. at 99. The language of the statute provides a broader remedy than the majority's narrow interpretation allows. <u>Montgomery v. Commissioner</u>, <u>supra</u> at 9.

The legislative history does not provide any specific expression of Congressional intent to bar taxpayers, such as petitioner, from raising an overpayment claim. <u>Id.</u> at 10. The majority limits the remedies available to taxpayers by holding that in section 6330 proceedings they cannot obtain a decision that there is an overpayment. Furthermore, the majority does not review petitioner's challenge to the amount of her tax liability for 1992 even though she properly raised this issue. Without a clear jurisdictional prohibition or inability, it would be most unjust to prohibit taxpayers from claiming an overpayment of the

---

[7] Occasionally the Court has myopically seen its "limited jurisdiction as reasons to be extra conservative in determining the Tax Court's jurisdiction." <u>Estate of Baumgardner v. Commissioner</u>, 85 T.C. at 456. This is not such an occasion, especially given the remedial nature of the statute in question.

tax in this forum and require them to seek it in another.  See Estate of Baumgardner v. Commissioner, 85 T.C. at 446.

I do not believe that Congress intended, when enacting section 6330, to expand this Court's jurisdiction and at the same time create a situation where choice of this forum would provide such unfair results.  See id. at 453.  To narrowly interpret the statute to prevent the Court from deciding an overpayment exists frustrates our congressionally conferred jurisdiction.

As we noted in Estate of Baumgardner v. Commissioner, supra at 457:  "it is hard to imagine that Congress could have intended to bifurcate an 'overpayment'" and that "It is equally hard to imagine that an 'overpayment' has a different meaning depending upon the forum.  Either of those approaches would force some taxpayers to resolve a single tax controversy in two different forums", and this would duplicate costs for taxpayers. The majority's approach will force taxpayers to resolve a single tax controversy in two different forums--assuming arguendo that they were not so barred by the period of limitations, res judicata, or prejudiced by having their claim being reduced or eliminated by the look-back rules of section 6511(b).

I seek to find harmony in the statutory framework in order to avoid acute injustice to taxpayers.  "Considering the overcrowded dockets in most Federal courts, we cannot be insensitive to opportunities to avoid unnecessary litigation."

Id. at 458. The majority merely punish (1) taxpayers whose cash reserves make it impossible for them to pursue relief in a District Court or the Court of Federal Claims, (2) taxpayers who are too unsophisticated to realize that a suit in District Court or the Court of Federal Claims could preserve his right to a refund, and (3) taxpayers whose expected refund is too small in relation to attorney's fees and other costs to justify a suit in District Court or the Court of Federal Claims. See Commissioner v. Lundy, 516 U.S. 235, 263 (1996) (Thomas, J., dissenting).

Petitioner has properly invoked the jurisdiction of the Court. By not deciding whether petitioner is entitled to an overpayment we are leaving an essential issue unaddressed. See Naftel v. Commissioner, 85 T.C. at 535. "The consequences of omitting consideration of this issue might well require additional hearings and evidence thus placing an undue burden on the Court as well as the parties." Id. "If we have jurisdiction to resolve the * * * issue, we should not ask the taxpayer who raises that issue at an Appeals Office hearing and in this Court to go to another court to resolve that issue". Washington I, 120 T.C. at 134 (Beghe, J., concurring). This is "inconsistent with the goals of judicial and party economy embodied in the slogan 'one-stop shopping'." Id.

Section 6404 and Section 6015(g)

The majority briefly addresses the fact that in section 6330 cases we have jurisdiction over section 6404 interest abatement, and in interest abatement cases we have jurisdiction to find an overpayment. Majority op. pp. 20-21. In addition to interest abatement, in section 6330 proceedings taxpayers also may request section 6015 relief. Sec. 6330(c)(2)(A)(i). Section 6015(g) provides for refunds regarding section 6015(b) and (f) relief.

If we can hear section 6015 and section 6404 claims in section 6330 proceedings, we should be able to enter decisions for overpayments and order refunds as an outgrowth of the section 6330 proceedings as to the section 6015 and section 6404 claims. See secs. 6015(g), 6404(i)(2)(B), 6512(b)(2). The interests of justice would be ill served if the rights of taxpayers differed according to the procedural posture of when the issue of the taxpayers' liability for the tax in issue is brought before the Court. Cf. Ewing v. Commissioner, 122 T.C. 32, 42 (2004) (citing Corson v. Commissioner, 114 T.C. 354, 364 (2000)). Identical issues brought before a single tribunal should receive similar treatment. Id. at 43.

The majority opinion creates a trap for the unwary. Taxpayers who choose to litigate their section 6015 and section 6404 claims as part of a section 6330 proceeding cannot obtain decisions of an overpayment or a refund in Tax Court. If those

same taxpayers had made claims for section 6015 relief or interest abatement in a non-section 6330 proceeding, we could enter a decision for an overpayment and could order a refund. Secs. 6015(g), 6404(i)(2)(B), 6512(b)(2).

Section 6512(b)(2)

The majority states that section 6512(b)(2), which grants the Tax Court authority to order the refund of an overpayment, is limited to overpayments in deficiency proceedings. Majority op. pp. 14-15. Congress added section 6512(b)(2) to the Code giving us authority to order a refund of <u>any</u> overpayment. <u>Estate of Quick v. Commissioner</u>, 110 T.C. 440, 443 (1998); <u>Belloff v. Commissioner</u>, 996 F.2d 607, 613 (2d Cir. 1993), affg. T.C. Memo. 1991-350.

Accordingly, I believe that section 6512(b)(2) provides the Court with jurisdiction to order the refund of any overpayment we decide. I believe the legislative history cited by the majority supports this view. Majority op. p. 16 note 17; see S. Rept. 100-309, at 17 (1988) (stating that the Tax Court should be able to enforce a determination that a taxpayer is due a refund and that the taxpayer should not have to incur additional time, trouble, and expense of enforcing the refund in another forum).

Conclusion

Section 6330 cases are not merely about whether or not the Commissioner can proceed with the proposed collection action.

Whether there is an overpayment has a direct bearing on whether the Commissioner can proceed with the lien or levy at issue. Meadows v. Commissioner, 405 F.3d at 952-953; Washington I, 120 T.C. at 120-121. The section 6330 determination includes the issue of an overpayment if it is raised as a relevant issue or if there is a challenge to the underlying liability. Sec. 6330(c)(2)(A) and (B), (3). Accordingly, I believe we have jurisdiction to enter a decision that petitioner had an overpayment in tax for the year at issue. Sec. 6330(d).

It would be illogical that we could conclude that the Commissioner has collected too much money, but we could not enter a decision that the taxpayer has overpaid his/her tax. The majority's interpretation of the statute conflicts with the remedial purpose of section 6330.

If we could enter a decision for an overpayment, as I propose, the issue of whether the Court has jurisdiction and authority to order a refund would not yet be ripe for decision as the overpayment decision would not yet be final. See secs. 6512(b)(2), 7481(a), 7483; Estate of Quick v. Commissioner, supra at 443; O'Connor v. Commissioner, T.C. Memo. 1992-410. I note that whether or not the Court is able to enforce our decision in a section 6330 case that the taxpayer overpaid his/her taxes,

however, is not relevant to whether we have authority to enter a decision for an overpayment.[8]

Respectfully, I dissent.

SWIFT, J., agrees with this dissenting opinion.

--------

[8] From our inception and for more than 60 years, the Tax Court (and our predecessors) had jurisdiction to enter a decision for an overpayment but could not order the Commissioner to credit or refund the overpayment contained in our decisions. See Naftel v. Commissioner, 85 T.C. 527, 533 (1985). In 1988, however, Congress added sec. 6512(b)(2) to the Code, giving us authority to order a refund of any overpayment. Belloff v. Commissioner, 996 F.2d 607, 613 (2d Cir. 1993), affg. T.C. Memo. 1991-350; Technical and Miscellaneous Revenue Act of 1988, sec. 6244(a), Pub. L. 100-647, 102 Stat. 3342, 3750. Accordingly, whether or not the Tax Court has authority to enforce a decision for an overpayment entered in a sec. 6330 case is simply not relevant to our ability to enter such a decision.