T.C. Summary Opinion 2011-33

UNITED STATES TAX COURT

BRIAN JOSEPH TALASKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17882-09S.          Filed March 17, 2011.

Brian Joseph Talaske, pro se.

<u>Kevin R. Erskine</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of sections 6330(d)(1) and 7463(f)(2).[1]  Pursuant
to section 7463(b), the decision to be entered is not reviewable
by any other court, and this opinion shall not be treated as
precedent for any other case.

_____

    [1]  All section references are to the Internal Revenue Code,
as amended.

Brian Joseph Talaske (petitioner) filed a petition with this Court in response to a Notice Of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining a proposed levy for 2005. The issue for decision is whether petitioner may challenge the existence or amount of the underlying tax liability for that year.

## Background

Some of the facts have been stipulated, and they are so found. Petitioner resided in the State of Michigan at the time that the petition was filed with the Court.

In March 2002, petitioner obtained a First USA VISA (First USA) credit card. Petitioner transferred to this new account balances from credit cards issued by other financial institutions.

In September 2002, petitioner defaulted on his First USA account.

As of March 31, 2003, petitioner's outstanding balance on his First USA account was $23,119.99, consisting of principal of $20,291.22 and finance charges of $2,828.77. On that date, First USA "charged off" principal of $20,291.22 and finance charges of $2,828.77, thereby resulting in a "new balance" of zero.[2]

---

[2] The record suggests that after Mar. 31, 2003, some attempt at collection may have been made by either First USA or a third-party agency; however, the record is clear that nothing was collected.

In or about 2004, First USA was acquired by JPMorgan Chase (Chase).

For tax year 2005, Chase issued to petitioner a Form 1099-C, Cancellation of Debt, showing cancellation of indebtedness on December 31, 2005, of $20,291.22. The account number listed on the form matches the number of petitioner's credit card account with First USA.

Petitioner does not recall receiving any Form 1099-C from Chase in 2006, and his Form 1040, U.S. Individual Income Tax Return, for tax year 2005, which was prepared and timely filed in 2006, did not report any income from cancellation of indebtedness.[3]

In or about May 2007, respondent commenced an examination of petitioner's 2005 return. Petitioner was aware of, and participated in, the examination.

By notice dated March 24, 2008, respondent determined a deficiency in petitioner's 2005 income tax of $4,366. The deficiency was attributable principally to respondent's determination that petitioner failed to report cancellation of indebtedness of $20,291 as reported by Chase on the aforementioned Form 1099-C.

---

[3] Petitioner's prior Federal income tax returns, and specifically petitioner's Federal income tax return for 2003, did not report cancellation of indebtedness of $20,291.22.

The March 24, 2008 notice of deficiency was mailed to petitioner at his last known address and was received by him no later than March 30, 2008. Notwithstanding the language in the notice of deficiency about filing a petition with the Tax Court "[i]f you want to contest this determination in court before making any payment," petitioner did not do so. Rather, by letter dated March 30, 2008, petitioner wrote to respondent's Holtsville, New York service center, the office that had issued the deficiency notice, stating (inter alia) that "I continue to object" and "I will petition the tax court as required if the IRS fails to recognize the errors of the IRS claims".

Petitioner having failed to file a petition for redetermination, respondent assessed the determined deficiency, together with statutory interest, on August 11, 2008, see secs. 6213(c), 6601(a), and made notice and demand for payment pursuant to section 6303(a). Petitioner did not satisfy the outstanding liability.

On December 1, 2008, respondent sent petitioner a Final Notice of Intent To Levy And Notice Of Your Right To A Hearing in respect of the outstanding liability. Petitioner responded by filing a Form 12153, Request for a Collection Due Process or Equivalent Hearing.

In a Notice Of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 dated June 19, 2009, respondent's

Appeals Office sustained the proposed levy.  The attachment to the notice of determination included the following statements:

### Issues raised by the taxpayer

#### Collection Alternatives Offered by Taxpayer
You offered no alternatives to collection.  You stated [sic] will not agree to an installment agreement.

#### Challenges to the Existence or Amount of Liability
You disagree with your liability because you stated you never had an account with Chase Bank and you have never had a credit card from Chase Bank and that Form 982 [Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment)] would qualify you for insolvency for tax year 2003.

Regarding petitioner's desire to challenge the existence or amount of the underlying liability, the attachment stated that "you had prior opportunity to dispute the additional taxes"; in that regard, the settlement officer's case activity record indicates that petitioner had previously been informed that he "can not dispute tax liability thru CDP [the so-called collection due process procedures] if * * * [he] had prior opportunity to dispute the liability."

In response to the June 19, 2009 notice of determination, petitioner timely filed a petition with this Court.  In the petition, petitioner challenged the existence or amount of the underlying liability.

During the course of these proceedings, including at trial, petitioner has focused solely on the existence or amount of the underlying liability.

## Discussion

A.  <u>General Principles</u>

If any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, then the Commissioner is authorized to collect such tax by levy upon the person's property.  Sec. 6331(a).  At least 30 days before enforcing collection by way of a levy on the person's property, the Commissioner is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.  Sec. 6331(d).

Generally speaking, the Commissioner cannot proceed with collection by levy until the person has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination.  Sec. 6330; see Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

If an administrative hearing is requested, the hearing is to be conducted by respondent's Appeals Office, and, at the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(b)(1), (c)(1).  Section 6330(c) prescribes the matters that a taxpayer may raise at such hearing. Section 6330(c)(2)(A) provides that a taxpayer may raise any

relevant issue relating to the unpaid tax or proposed levy, including spousal defenses and collection alternatives. Additionally, the taxpayer may challenge the existence or amount of the underlying tax liability if the taxpayer did not receive a statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection, taking into account, inter alia, collection alternatives proposed by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. See sec. 6330(c)(3).

Section 6330(d)(1) provides that a taxpayer may, within 30 days of the issuance of a notice of determination, appeal the determination of the Appeals Office to the Tax Court, and this Court shall have jurisdiction with respect to such matter.

B. The Parties' Positions

Petitioner contends on various grounds that he never received income in 2005 in the form of cancellation of

indebtedness; therefore, in petitioner's view, respondent's March 24, 2008 deficiency determination was erroneous.[4]

Respondent invokes section 6330(c)(2)(B) and contends that petitioner is barred from challenging respondent's March 24, 2008 deficiency determination in the present collection review proceeding because petitioner had a prior opportunity to do so in the form of an action for redetermination of deficiency.

C. Analysis

As previously stated, a taxpayer may challenge the existence or amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency for such tax liability or did not

---

[4] Petitioner argues that he never had any account with Chase so that the Form 1099-C issued by that financial institution was of no import. However, the record demonstrates that petitioner had an account with First USA and that Chase was the successor in interest to such account.

Petitioner also argues that his credit card debt with First USA was canceled in 2002 when he defaulted. However, a debtor's default is not equivalent to forgiveness of the debt by the debtor's creditor.

Petitioner argues further that his credit card debt was canceled in 2003 when it was "charged off" by First USA. However, this argument does not address the suggestion in the record that some effort at collection was made after Mar. 31, 2003, by First USA or a third-party agency; the argument also assumes that the "charge off" of a debt is equivalent to cancellation of indebtedness for purposes of sec. 61(a)(12) and does not account for the fact that Chase (successor-in-interest to First USA) did not cancel the indebtedness until 2005.

Finally, petitioner argues that regardless of when his credit card debt with First USA may have been canceled, he was insolvent at the time, which, in petitioner's view, justifies his failure to report the $20,291.22 amount on any return. In this regard, the record does strongly hint of petitioner's financial frailty; however, petitioner's insolvency at any particular point in time was never proven.

otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Stated otherwise, a taxpayer may <u>not</u> challenge the underlying liability in an administrative hearing, and therefore this Court may <u>not</u> review that liability in a subsequent collection review proceeding such as the instant one, <u>if</u> the taxpayer received a notice of deficiency or otherwise had a prior opportunity to dispute the underlying liability. <u>Id.</u>; <u>Sego v. Commissioner</u>, 114 T.C. 604, 609 (2000).

Here the record is clear that respondent mailed a notice of deficiency for 2005 to petitioner and that petitioner actually received such notice within a few days after its mailing. Petitioner therefore had the opportunity to file a petition for redetermination with this Court and dispute the determined deficiency. He failed to do so. Thus, as a matter of law, petitioner is barred in the present collection review proceeding from challenging the existence or amount of the underlying liability that respondent seeks to collect.[5] We therefore sustain respondent's determination that collection may proceed by way of levy.

---

[5] Whether petitioner might be able to do so in a refund action in a U.S. District Court or in the U.S. Court of Federal Claims, see sec. 7422; <u>McCormick v. Commissioner</u>, 55 T.C. 138, 142 n.5 (1970), is a matter that we need not (and do not) address, as the Tax Court lacks jurisdiction over that type of action, cf. <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. 1 (2006).

## Conclusion

We have considered all of the arguments made by petitioner, and, to the extent that we have not specifically addressed any of them, we conclude that they are irrelevant or without merit.

To reflect our disposition of the disputed issue,

<u>Decision will be entered for respondent</u>.