T.C. Memo. 2012-131

UNITED STATES TAX COURT

FARID FARHOUMAND AND SONYA S. FARHOUMAND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12540-08L.          Filed May 8, 2012.

<u>Arthur H. Boelter</u>, for petitioners.

<u>Melissa L. Hilty</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>: Pursuant to section 6330(d), petitioners seek review of

respondent's determination to proceed with the collection of their 2000 Federal

income tax liability.[1] This matter was submitted fully stipulated under Rule 122 on January 31, 2011. Subsequently, on January 19, 2012, respondent filed a motion to dismiss for lack of jurisdiction which remains before the Court and which, if granted, could eliminate the need for any further ruling on the merits pursuant to the Rule 122 submission. The issues for decision are: (1) whether the Court has jurisdiction to consider petitioners' challenge to the section 6654(a) addition to tax for failure to pay estimated tax for 2000 (section 6654(a) addition to tax); (2) whether petitioners are entitled to a waiver of the section 6654(a) addition to tax for 2000; and (3) whether respondent abused his discretion when he sustained the proposed levy.

## Background

As noted above, the parties submitted this case fully stipulated under Rule 122. We incorporate the stipulated facts herein by this reference. Petitioners resided in Indiana when they filed their petition.

Farid Farhoumand is a stockbroker and investment consultant. His wife, Sonya S. Farhoumand, does not work outside the home.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) for the relevant period, and Rule references are to the Tax Court Rules of Practice and Procedure.

At various times throughout 2000 Mr. Farhoumand purchased and sold stocks. His stock transactions generated a net loss of approximately $3 million. When Mr. Farhoumand met with a tax adviser to have petitioners' 2000 return prepared, he discovered that they could deduct only $3,000 of the capital losses against ordinary income because of the limitations on claiming capital losses. See sec. 1211(b).

On November 2, 2001, petitioners filed their joint Form 1040, U.S. Individual Income Tax Return, for 2000, reporting income of $1,487,577 and tax due of $589,211. Petitioners' total estimated income tax for 2000 was $502,604, to be paid in quarterly installments of $125,651 each on April 15, June 15, and September 15, 2000, and January 15, 2001. Petitioners failed to make any of those payments.

The Form 4340, Certificate of Assessments, Payments and Other Specified Matters, for petitioners' tax account for 2000 shows the following assessments and payments or credits, as of December 4, 2006:

| Date | Explanation | Assessments | Payments/Credits |
|------|-------------|-------------|------------------|
| 11/2/01 | Prompt assessment | $559,026.00 | --- |
| 11/2/01 | Sec. 6651(a)(1) addition to tax | 125,780.85 | --- |
| 11/2/01 | Sec. 6654(a) addition to tax | 30,066.88 | --- |
| 11/2/01 | Interest | 28,393.83 | --- |
| 4/15/03 | Overpaid credit applied | --- | $35,877.55 |
| 10/17/03 | Overpaid credit applied | --- | 75,027.00 |
| 12/22/03 | Overpaid credit applied | --- | 34,860.42 |
| 6/22/06 | Payment | --- | 559,815.00 |
| 10/19/06 | Overpayment applied | --- | 5,474.23 |
| 2006 | Sec. 6651(a)(1) addition to tax abated | (125,780.85) | --- |
| 12/4/06 | Sec. 6651(a)(2) addition to tax | 93,567.49 | --- |
| Total | | 711,054.20 | 711,054.20 |

Although petitioners' tax account appears fully paid as of December 4, 2006, we infer from the record that respondent's assessment of the addition to tax under section 6651(a)(2) for failure to pay the amount shown as tax on the return (section 6651(a)(2) addition to tax) for 2000 was only a partial assessment of the section 6651(a)(2) addition to tax due from petitioners. On June 18, 2007, respondent assessed an additional section 6651(a)(2) addition to tax for 2000 of $44,574.52. Respondent did not send petitioners a notice of deficiency.

On August 22, 2007, petitioners mailed respondent a letter requesting that respondent waive the section 6654(a) addition to tax of $30,036 (plus interest) under section 6654(e)(3). In the attached memorandum petitioners explained that they had failed to pay the required installments of estimated tax because the losses

from Mr. Farhoumand's stock trades were attributable to "one of the most extraordinary collapses in the history of the stock market", that the losses continued throughout the year, and that they believed that because of these losses they could not possibly owe any income tax for 2000. Petitioners also explained that they had no money to pay installments of estimated tax.

On September 3, 2007, respondent mailed to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for 2000 (final notice). The final notice showed that respondent had assessed the section 6651(a)(2) addition to tax of $44,574.52 and interest and that the total amount due was $195,719.13.[2] Petitioners timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. In their request petitioners acknowledged that they owed income taxes for 2000 but explained that they had requested a waiver of the section 6654(a) addition to tax, which, if accepted, would have reduced the tax due to approximately $150,000. They also requested additional time to borrow money to pay their overdue taxes.

---

[2]The final notice shows the assessed balance of $44,574.52, accrued interest of $164,284.90, and a credit with respect to the sec. 6651(a)(2) addition to tax of $13,140.29, for the total amount of $195,719.13. We infer from the record that as of March 26, 2009, the date of the Form 4340, additional interest of $164,284.90 had accrued but had not yet been assessed.

On January 9, 2008, Settlement Officer Joyce A. Daniels mailed petitioners a letter scheduling a telephone hearing for January 31, 2008.  She requested that petitioners provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, or Form 433-B, Collection Information Statement for Businesses.  Petitioners' attorney, Arthur H. Boelter, who resides and practices in Seattle, Washington, requested that the case be transferred to the Appeals Office in Seattle for a face-to-face hearing, which he wanted to attend on their behalf.

Having determined that a face-to-face hearing could take place only at the Appeals Office closest to petitioners' place of residence, the Internal Revenue Service (IRS) transferred the case file to Indiana.  On March 5, 2008, Settlement Officer Mark L. Grzesiowski mailed petitioners a letter scheduling a telephone hearing for April 2, 2008, which was subsequently rescheduled to April 9, 2008. Settlement Officer Grzesiowski requested that petitioners provide a completed Form 433-A or Form 433-B and proof of estimated tax payments for 2007.  On March 11 and 19, 2008, Mr. Boelter faxed letters to Settlement Officer Grzesiowski reiterating the request for a face-to-face hearing in Seattle. Petitioners did not submit the requested financial information before the hearing, explaining to Settlement Officer Grzesiowski that they were prepared to pay the

remaining liability once the IRS waived the section 6654(a) addition to tax. On March 24, 2008, Settlement Officer Grzesiowski informed Mr. Boelter that a face-to-face hearing could be held only at an Appeals Office in Indiana, where petitioners resided.

On April 9, 2008, a telephone conference was held between Mr. Boelter and Settlement Officer Grzesiowski. During the hearing Mr. Boelter raised only the issue of the waiver of the section 6654(a) addition to tax.

On April 29, 2008, respondent sent petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 2000. In the notice of determination the Appeals Office determined that petitioners did not qualify for the waiver of the section 6654(a) addition to tax and that it was appropriate to collect the unpaid tax liability by levy.

Petitioners timely petitioned this Court. Petitioners then filed a motion for partial summary judgment, which we denied. After the Court held a conference call with the parties, respondent filed a motion to dismiss for lack of jurisdiction. <u>See</u> <u>infra</u> pp. 10-11.

At any relevant time petitioners had not attained age 62 or become disabled. Petitioners paid an addition to tax of $12,058 for failing to pay estimated tax for 1999.

Discussion

I.    Section 6330

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.  If the person requests a hearing, a hearing shall be held before an impartial officer or employee of the IRS Appeals Office.  Sec. 6330(b)(1), (3).  At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a notice of deficiency for the tax liability or did not otherwise have an earlier opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must determine whether the proposed levy action may proceed.  The Appeals Office is required to take into consideration:  (1) verification presented by the Secretary[3] that the requirements of applicable law and administrative procedure have been met, (2) relevant issues

---

[3]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed levy action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with the section 6330 hearing. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not in dispute, the Court will review the determination of the Appeals Office for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Before reviewing the notice of determination, we shall consider respondent's motion.[4]

---

[4]The parties addressed the issue described herein upon the Court's invitation to do so.

II.    Respondent's Motion To Dismiss for Lack of Jurisdiction

    A.    The Parties' Arguments

In his motion to dismiss respondent contends that this Court lacks jurisdiction to review the notice of determination with respect to the section 6654(a) addition to tax because he issued the final notice only with respect to the section 6651(a)(2) addition to tax. In respondent's view, because the only liability that he can collect and with respect to which he issued the final notice was the section 6651(a)(2) addition to tax, the only relevant issue in the section 6330 proceeding and in this Court is the collection of the section 6651(a)(2) addition to tax. Respondent believes that for this reason the waiver of the section 6654(a) addition to tax was not validly raised during the section 6330 hearing and therefore the Court has no jurisdiction to consider any issues regarding the waiver. Respondent also contends that (1) as of the date of the final notice, petitioners had paid the section 6654(a) addition to tax and owed no taxes for 2000, rendering any potential collection of the section 6654(a) addition to tax moot, and (2) under Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006), the Court has no jurisdiction to consider the section 6654(a) addition to tax on the ground of mootness.

Respondent requests the Court to uphold the notice of determination and allow respondent to proceed with the levy.[5]

Petitioners contend that the entire liability for the taxable year is the subject of the collection proceeding rather than what the final notice shows. They also contend that it is irrelevant that a component of the total liability for the taxable year has been paid because a waiver of the section 6654(a) addition to tax is a method of paying the liability shown in the final notice. Petitioners distinguish Greene-Thapedi on the ground that a portion of the liability for the tax year remains unpaid.

B.    Analysis

The Tax Court is a court of limited jurisdiction, and we may exercise jurisdiction only to the extent expressly authorized by Congress. See sec. 7442; Greene-Thapedi v. Commissioner, 126 T.C. at 6. Our jurisdiction under section 6330(d)(1) depends upon the issuance of a valid notice of determination and the filing of a timely petition for review. See Orum v. Commissioner, 123 T.C. 1, 8 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Sarrell v. Commissioner, 117 T.C. 122, 125 (2001). Respondent issued a notice of determination, and petitioners timely

---

[5]Respondent's request to uphold the notice of determination is inconsistent with his motion to dismiss for lack of jurisdiction. We construe respondent's request to uphold the notice of determination as an alternative position.

filed a petition. Accordingly, we have jurisdiction to review the notice of determination.

Under Greene-Thapedi, we may dismiss a case when the proposed levy for the taxpayer's tax liability is moot. In Greene-Thapedi v. Commissioner, 126 T.C. at 7, the proposed levy was moot because the Commissioner acknowledged that there was no unpaid liability for the determination year upon which a levy could be based and that he was no longer pursuing the levy. Respondent contends that this case is similar to Greene-Thapedi because petitioners paid the section 6654(a) addition to tax and respondent is not pursuing collection of that liability. We disagree. The proposed levy is not moot because respondent assessed the section 6651(a)(2) addition to tax, issued a final notice and a notice of determination (which addressed the section 6654(a) addition to tax waiver), and intends to proceed with the levy. Petitioners are raising an issue which, if we address it, could result in a determination that the levy may not proceed. Because the collection of the tax liability for 2000 remains unresolved, we shall not dismiss the case as moot.

Although respondent styled his motion a motion to dismiss for lack of jurisdiction, the core of his position is that (1) we may not consider a challenge to the section 6654(a) addition to tax because it is not the liability that respondent

assessed and is attempting to collect by levy, and (2) petitioners raise no argument that we may properly consider. We disagree for several reasons.

First, petitioners raise an issue that is relevant to the unpaid tax and the proposed levy. Section 6330(c)(2) allows the taxpayer to raise any relevant issue relating to the unpaid tax or the proposed levy during the section 6330 hearing.[6] In Freije v. Commissioner, 125 T.C. 14, 26 (2005), we stated that Congress intended a broad construction of what issues a taxpayer was entitled to raise in a section 6330 hearing. Petitioners' argument that they are not liable for an addition to tax that respondent had assessed and they had paid, even if different from the one shown in the final notice, is a relevant issue because it affects the amount of tax that respondent is entitled to collect for the determination year. Cf. id. at 26-27.

Second, we view petitioners' request for a waiver of the section 6654(a) addition to tax as a challenge to the underlying tax liability, which we may review de novo because they did not receive a notice of deficiency for 2000. See Sego v. Commissioner, 114 T.C. at 610. Although section 6330 and regulations thereunder

---

[6]Sec. 6330(c)(2) provides several examples of such relevant issues, such as appropriate spousal defenses, challenges to the appropriateness of the collection actions, offers of collection alternatives, and, under certain circumstances, challenges to the existence or amount of the underlying liability.

do not define the phrase "underlying tax liability", in <u>Montgomery v. Commissioner</u>, 122 T.C. 1, 7 (2004), we interpreted it "as a reference to the amounts that the Commissioner assessed for a particular tax period."[7] Because the "underlying tax liability" refers to <u>any</u> amounts assessed <u>for the relevant tax period</u>, the liability not shown in the final notice is a component of the underlying tax liability and can be properly challenged in a section 6330 proceeding. <u>Id.</u> Accordingly, we conclude that petitioners may raise an argument regarding the liability not shown in the final notice. As follows from the foregoing, we shall deny respondent's motion to dismiss for lack of jurisdiction.

III. <u>Review of the Notice of Determination</u>

We now address petitioners' argument that they are not liable for the section 6654(a) addition to tax. The parties agree that petitioners did not receive a notice of deficiency for 2000. Accordingly, we review respondent's determination de novo. <u>See</u> <u>Sego v. Commissioner</u>, 114 T.C. at 610.

---

[7]Although in <u>Montgomery v. Commissioner</u>, 122 T.C. 1 (2004), the precise issue was different from the issue in this case, the facts relevant to the issue at hand are similar. In <u>Montgomery</u>, the taxpayers not only challenged the $222,315.34 amount specified in the final notice, but they also contended that they had overpaid their taxes by $519,087. <u>See</u> <u>id.</u> at 11 n.1 (Wells, J., concurring). Accordingly, both in <u>Montgomery</u> and in the case at hand, the challenged liability concerns an amount not specified in the final notice.

Generally, section 7491(c) provides that the Commissioner bears the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount. To satisfy the burden of production, the Commissioner must produce evidence that imposing the relevant penalty or addition to tax is appropriate. See Swain v. Commissioner, 118 T.C. 358, 363 (2002). Respondent introduced evidence establishing that petitioners were required to pay estimated tax but failed to do so.[8] This satisfies respondent's burden of production under section 7491(c). Accordingly, petitioners bear the burden of introducing evidence establishing that the imposition of the addition to tax is not appropriate. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Section 6654(a) imposes an addition to tax for underpayment of a required installment of estimated tax. Each required installment of estimated tax is equal to 25% of the "required annual payment", which in turn is equal to the lesser of (1) 90% of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90% of his or her tax for such year), or (2) if the taxpayer filed a return for the immediately preceding taxable year, 100% of the tax shown on that return. Sec. 6654(d)(1)(A) and (B). The addition to tax is imposed regardless of whether

---

[8]The parties stipulated that petitioners had an $855,353 Federal income tax liability for 1999.

there was reasonable cause for the underpayment. Sec. 1.6654-1(a)(1), Income Tax Regs. The addition to tax under section 6654(a) may be waived if "the Secretary determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience." Sec. 6654(e)(3)(A).

Petitioners contend that they qualify for a waiver under section 6654(e)(3).[9] They claim that they had negative cashflow every quarter and had no money to pay estimated tax. They claim that "the bursting of the Dot-Com bubble in 2000", which was one of the "most momentous" collapses in stock market history, qualifies as an unusual circumstance within the meaning of section 6654(e)(3). Petitioners state that although they had taxable income, "[o]n a profit and loss basis * * * [their] losses exceeded their income by $2,000,000." Because they had continuous losses, they assumed that they had no income and would not owe any income tax for 2000. However, during the return preparation process petitioners found out that they were permitted to deduct only $3,000 of their capital loss.[10]

---

[9]The parties stipulated that petitioners do not qualify for any of the other exceptions to the estimated tax addition to tax under sec. 6654(e).

[10]Sec. 1211(b) provides that losses from sales or exchanges of capital assets are allowed only to the extent of the gains from such sales or exchanges, plus the lower of $3,000 or the excess of such losses over the gains.

Petitioners also contend that the imposition of the addition to tax would be against equity and good conscience. Although petitioners recognize that section 6654(a) contains no reasonable cause exception, they contend that several cases acknowledge that an honest mistake as to tax liability qualifies as reasonable cause for the section 6651(a)(1) addition to tax and the section 6662(a) penalty, and therefore the imposition of the section 6654(a) addition to tax would be against equity and good conscience.

We disagree. Even if petitioners did not know about the limitations on deductibility of capital losses under section 1211(b), as of the time when each payment of estimated tax was due they did not know whether they would have income or a loss for the full year. They had no way of predicting whether they would be able to recoup their losses by yearend, and Mr. Farhoumand continued his investment activity, presumably with the hope of a market turnaround.

We also reject petitioners' argument that they had no money to pay estimated tax because they used money to pay for stock losses. Petitioners did not pay for stock losses, as they claim. They incurred losses upon selling shares they owned. Yet they continued to purchase other stocks, instead of using the sale proceeds to

pay estimated tax.[11]  In addition, petitioners' estimate that they owe no tax for the taxable year is irrelevant because the Code does not provide for the reasonable cause defense for the section 6654(a) addition to tax, see, e.g., Wolfgram v. Commissioner, T.C. Memo. 2010-69, nor would the imposition of the section 6654(a) addition to tax be against equity and good conscience under the circumstances of this case.  Lastly, we disagree that the stock market volatility is an unusual circumstance.  Accordingly, we conclude that petitioners do not qualify for a waiver under section 6654(e)(3).

During the hearing petitioners did not offer collection alternatives, and in this proceeding they have not pursued any argument or presented any evidence that would allow us to conclude that the determination to sustain the levy was arbitrary, capricious, without foundation in fact or law, or otherwise an abuse of discretion. The Appeals Office verified that all requirements of applicable law or administrative

---

[11]Petitioners' select stock purchases show that they had sufficient funds to continue to buy stocks.  On April 10, 2000, the week that petitioners' first installment of estimated tax of $125,651 was due, they purchased several blocs of shares of Cisco Systems, Inc., and shares of Rydex Series Trust.  The cost of one bloc of shares of Cisco Systems, Inc., was $367,574 (later sold at a loss for $261,517).  On June 5, 2000, around the time when the second installment of $125,651 was due, petitioners purchased two blocks of stock of Profunds Ultraotc Invs. for $298,752 and $479,880 (sold later in 2000 for $333,598 and $472,253, respectively).  On September 29, 2000, around the time the third installment of $125,651 was due, petitioners bought stock of Rambus, Inc., for $399,818 (later sold at a loss for $265,254).

procedure were met.  The Appeals Office concluded that the levy balanced the need for efficient collection of taxes with petitioners' concerns that the collection action be no more intrusive than necessary.  Accordingly, we conclude that respondent did not abuse his discretion in sustaining the levy.

We have considered all of the arguments raised by either party, and to the extent not discussed above, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order denying respondent's motion to dismiss for lack of jurisdiction will be issued, and decision will be entered for respondent</u>.